IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JUSTIN PANUS, | § | |
| TDCJ-CID No. 2167693, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-CV-999- |
| | § | RP-SH |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent.[1] | § | |

## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Petitioner Justin Panus (Panus) is a Texas state prisoner challenging his convictions for aggravated kidnapping and unlawful possession of a firearm through a petition for writ of habeas corpus under 28 U.S.C. §§ 2241 and 2254. The petition, however, should be denied and dismissed with prejudice because Panus failed to establish that the state courts' rejection of his claims was objectively unreasonable.

## JURISDICTION

Panus seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254, which provides the Court with jurisdiction over the subject matter and the parties as Panus was convicted within the Court's jurisdiction.

---

[1]    For purposes of clarity, Respondent will be referred to as "the Director."

## PETITIONER'S ALLEGATIONS

The Director understands Panus to allege the following grounds for relief regarding his convictions:

1. Trial counsel provided ineffective assistance by giving erroneous advice, causing petitioner to reject a plea deal;

2. Trial counsel provided ineffective assistance by: a) using a meritless legal theory at trial; b) conceding petitioner's guilt; c) advising petitioner not to testify; and d) failing to present mitigating evidence;

3. His charge was improperly enhanced to aggravated kidnapping; and

4. Trial Counsel provided ineffective assistance by failing to preserve petitioner's constitutional challenge to his charge.

ECF No. 1, at 6–9; ECF No. 4, at 2.

## GENERAL DENIAL

The Director denies all of Panus's assertions of fact except those supported by the record or specifically admitted herein. The Director opposes any future, substantive motions filed by Panus—including, without limitation, a motion to amend and/or supplement his petition, and a motion for an evidentiary hearing—and will respond to any such motions only upon order of the Court.

# STATEMENT OF THE CASE

## I.    Procedural History

The Director has lawful custody of Panus pursuant to two convictions out of the 368th Judicial District Court of Williamson County, Texas in cause number 16-2610-K368 (comprised of two counts), styled *The State of Texas v. Justin Edward Panus*. SHCR-01, at 162–69.[2] Panus was charged with and plead not guilty to one count of aggravated kidnapping and one count of unlawful possession of firearm by felon. SHCR-01, at 150–51; 11 RR 30–32.[3] On October 26, 2017, a jury found Panus guilty on both charges. SHCR-01, at 157–58; 12 RR 66. Panus elected to be sentenced by the trial court. CR 82–83.[4] Following a punishment trial, Panus was sentenced to life imprisonment on the aggravated kidnapping charge and ten years' imprisonment on the unlawful possession of a firearm charge, the sentences to be served concurrently. SHCR-01, at 162–69; 13 RR 163. Panus's conviction was affirmed by the Third Court of Appeals on August 30, 2018. *Panus v. State*, No. 03-17-00719-CR, 2018 WL 4140851 (Tex. App. Aug. 30, 2018) The Texas Court of

---

[2]    "SHCR" refers to the Clerk's Record of pleadings and documents filed with the court during Panus's state habeas proceedings. *See generally*, *Ex parte Panus*, No. 94,335-01 (Tex. Crim. App. 2022).

[3]    "RR" refers to the statement of facts of the hearings in the Reporter's Record, preceded by the volume number and followed by the page number(s).

[4]    "CR" refers to the Clerk's Record filed with the court during Panus's trial proceedings, followed by the page number(s).

Criminal Appeals (CCA) refused Panus's petition for discretionary review (PDR) on January 16, 2019. *Panus v. State*, PD-0948-18 (Tex. Crim. App. 2018). His motion for rehearing was denied on February 27, 2019. *Id.* The Supreme Court denied his petition for writ of certiorari on October 7, 2019. *Panus v. Texas*, No. 19-5043 (2019).

Panus filed a motion for forensic DNA testing under Texas Code of Criminal Procedure Chapter 64 on December 30, 2019. CR (20-099-CR) 174–76.[5] The trial court denied his motion for DNA testing on April 2, 2020. Supp. CR (20-099-CR) 3. The Third Court of Appeals of Texas affirmed the denial of his motion on January 26, 2022. *Panus v. State*, No. 03-20-00099-CR, 2022 WL 221236 (Tex. App. Jan. 26, 2022). The CCA refused his petition for discretionary review on May 18, 2022. *Panus v. State*, PD-0113-22 (Tex. Crim. App. 2022). His motion for rehearing was denied on June 29, 2022. *Id.*

Panus filed an application for a state writ of habeas corpus challenging his convictions on July 24, 2022. SHCR-01, at 18–33. The CCA denied the application without written order on findings of the trial court without a hearing and on the court's independent review of the record on December 14, 2022. *Id.* at "Action Taken" Sheet. Panus then filed the instant petition on August 15, 2023. ECF No. 1, at 12.

---

[5]   "CR (20-099-CR)" refers to the Clerk's Record filed with the court during Panus's motion for forensic DNA testing proceedings, followed by the page number(s).

## II.    Statement of Facts

The state appellate court summarized the evidence in this case as follows:

BACKGROUND

The events leading to Panus's convictions began in the early morning hours of September 25, 2016, when he used a gun to barge into the house where his ex-girlfriend Christina Cooper was staying with her fiancé Matthew Gauthier and his two young daughters. After threatening Gauthier at gunpoint, Panus dragged Cooper out of the house by her hair and forced her into his truck. He placed the gun on his lap, visible to Cooper, while he drove. Cooper testified that during the drive, Panus hit her face with the gun and threatened to kill her stating, "If we get out and you make a scene, I swear to God I'll kill you right here." When he parked the truck at his apartment complex and got out, Cooper escaped from the passenger side and ran away.

Gauthier testified that the gun Panus used to gain entry into the house was distinctive because it had a light and projected a red-laser dot onto its target. Gauthier further testified that Panus pointed the laser dot of the gun at one of Gauthier's daughters in the living room before pointing the gun at Gauthier's head and forcing him to kneel in a corner of the house.

Cooper testified that she met Panus through an online-dating site during a time when she and Gauthier had separated. She stated that she and Panus initially liked each other, that they saw each other and spoke by phone daily, and sent text messages to each other more than once a day. But when Panus began to text her with increasing frequency and leaving more of his belongings at her apartment, Cooper told him that she thought their relationship was moving too quickly. Panus disagreed. Cooper noticed that Panus became jealous after seeing her talking with a male neighbor. Cooper testified that two days before the offenses, she was still getting lots of phone calls and texts from Panus. Records of data showing Panus's phone calls, texts, and Facebook messages to Cooper near the time of his offenses, without the

5

content of those communications, were admitted into evidence as State's Exhibit 59. That exhibit also showed Panus's Google searches on his phone near the time of his offenses, without the results of those searches.

On the day before the offenses, Cooper told Panus that she would not see him that day because she had plans with a friend. Cooper testified that she met Gauthier, his daughters, and his aunt for lunch, and afterward, they went shopping for the girls' Halloween costumes and then to Gauthier's home. Cooper testified that during that time, Panus "texted over and over and over again..... He called on [ ] Facebook over and over again." Cooper told him to stop or she would call the police. When Cooper blocked Panus on her phone, Cooper began receiving messages from Panus's roommate. Cooper then testified about the details of Panus's confrontation of her at Gauthier's house, his abduction of her, and her eventual escape from him at about 3:00 a.m.

The jury also heard from Woodson Blase, a Leander Police Department Detective and Special Deputy U.S. Marshal with the Lone Star Fugitive Task Force. Detective Blase testified about his part of the investigation to locate and arrest Panus, including Panus's refusal to comply with police commands to show his hands and instead, reaching toward his waistband, where officers found a subcompact pistol.

After trial, the jury found Panus guilty of aggravated kidnapping and unlawful possession of a firearm by a felon. The trial court assessed his punishment and rendered judgment in accordance with the jury's verdict.

*Panus*, 2018 WL 4140851, at *1–2. (Footnotes removed)

## STATE COURT RECORDS

Copies of Panus's state court records will be filed within ten (10) business days from the filing of this answer. A copy of the records will not be forwarded to Panus.[6]

## EXHAUSTION/LIMITATIONS/SUCCESSIVE PETITION

The Director believes that Thornton sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254(b)(1) with regard to the allegations above. However, the Director reserves the right to raise the statute of limitations or the exhaustion and procedural default defenses should petitioner or this Court disagree with the Director's construction of the claims presented, or should petitioner attempt to add new or additional claims and evidence. Finally, this federal petition is neither barred by limitations, 28 U.S.C. § 2244(d), nor subject to the successive petition bar, 28 U.S.C. § 2244(b).

## ANSWER WITH BRIEF IN SUPPORT

## I.    Standard of Review

Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in state criminal justice systems, not a substitute for ordinary error correction through appeal. For claims that were adjudicated in

---

[6]    *See Sixta v. Thaler*, 615 F.3d 569, 573 (5th Cir. 2010) (Respondent is not required to serve Petitioner with a copy of the state court records.).

state court, § 2254(d) imposes a highly deferential standard that demands a federal court grant habeas relief only where one of two conditions are present in the state court judgment. A federal court may grant relief if the state court adjudicated a constitutional claim contrary to, or unreasonably applied clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 100–01 (2011) (citing *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Or the court may grant relief if the state court decision was based on an unreasonable determination of facts in light of the record. *Id.* Section 2254(d)'s standard is necessarily difficult to meet because it was so designed.

A state court decision can be "contrary" to established federal law in two ways. *(Terry) Williams*, 529 U.S. at 405–06. First, if the state court applies a rule that contradicts Supreme Court precedent. *Id.* at 405. Second, if the state court confronts facts that are "materially indistinguishable" from relevant Supreme Court precedent but reaches an opposite result. *Id.* at 406. A state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *(Terry) Williams*, 529 U.S. at 406. A state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407–09. The focus of this test is not on the state court's method of reasoning, but rather on

8

its ultimate legal conclusion. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) ("It seems clear to us that a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision.").

To determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington*, 562 U.S. at 87. Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Further, in reviewing a state court's merits adjudication for reasonableness, a federal court is limited to the record that was before the state court. 28 U.S.C. § 2254(d)(2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The question for federal review is not whether the state court decision was incorrect, but whether it was unreasonable, which is a substantially higher threshold. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012). If a higher state court offered

different grounds for its ruling than a lower court, then only the higher court's decision is reviewed. *Id.* "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

This Court must accept as correct any factual determinations made by the state courts unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Ford v. Davis*, 910 F.3d 232, 234 (5th Cir. 2018) ("a state court's factual findings are presumed to be correct, and the applicant bears the burden of rebutting that presumption by clear and convincing evidence."). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."); *see also Sumner v. Mata*, 449 U.S. 539, 546–47 (1981) (holding that state appellate courts' findings are entitled to the same respect that trial judges' findings receive). Deference to the factual

findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that "a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review."). Further, the district court can "infer the state court's factual findings" so long as "some indication of the legal basis for the state court's denial of relief" exists. *Ford*, 910 F.3d at 235 (citing *Goodwin v. Johnson*, 132 F.3d 162, 184 (5th Cir. 1997)).

Moreover, where the state's highest court's decision lacks any reasoning, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Furthermore, an evidentiary hearing is precluded unless: (1) a petitioner's claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) the petitioner establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). A failure to meet this standard of "diligence" will bar a federal evidentiary hearing in the absence of a convincing claim of actual innocence that can only be established by newly discovered evidence. *(Michael)*

*Williams v. Taylor*, 529 U.S. 420, 436 (2000). For example, a petitioner's failure to present controverted, previously unresolved factual issues to the state court can qualify as a "failure" under the plain meaning of § 2254(e)(2). *Id.* at 433. However, Section 2254(e)(2) has "force [only] where § 2254(d)(1) does not bar federal habeas relief." *Pinholster*, 563 U.S. at 185–186. Accordingly, even if a petitioner can leap the § 2254(e)(2) hurdle, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.* at 1400. And whatever discretion remains after *Pinholster* to hold an evidentiary hearing, it is still appropriate to deny such a hearing if sufficient facts exist to make an informed decision on the merits. *Schriro*, 550 U.S. at 474–75. Petitioner has not met this standard for a hearing, and any such request should be denied.

Finally, pre-AEDPA precedent forecloses habeas relief if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

## II.    The State Court's Determination to Deny Relief to Panus's Ineffective Assistance of Trial Counsel Claims Must Be Upheld. (Claims 1, 2, and 4)

Panus alleges that trial counsel, James Gerard McDermott and William Todd Ver Weire (trial counsel), provided ineffective assistance by: A) giving erroneous advice, causing petitioner to reject a plea deal; B) using a meritless legal theory at trial; C) conceding petitioner's guilt; D) advising petitioner not to testify; E) failing to present mitigating evidence; and F) failing to preserve a constitutional challenge to Texas Penal Code 20.04. *See* ECF No. 1, at 6–9; ECF No. 4, at 2. These claims are conclusory and without merit.

The proper standard for determining whether counsel's performance was constitutionally adequate, is that of "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Loyd v. Whitley*, 977 F.2d 149, 156 (5th Cir. 1992). Merely alleging that counsel's performance was deficient is not enough; instead, a petitioner must show that counsel's performance fell beyond the bounds of prevailing, objective, professional standards. *Id.* at 688. Furthermore, in determining the merits of an alleged Sixth Amendment violation, courts "must be highly deferential" to counsel's conduct. *Id.* at 689. A reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy," *Wilkerson v. Collins*, 950 F.2d 1054, 1065

(5th Cir. 1992), and every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To satisfy the prejudice prong of *Strickland*, Panus must show that counsel's errors were so serious as to deprive the defendant a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687. The petitioner may not simply allege, but must "affirmatively prove" prejudice. *Id.* at 693. To demonstrate prejudice, the convicted defendant must show that as a result of trial counsel's unprofessional errors, there exists a reasonable probability that the result of the proceeding would have been different. *Id.* at 694; *see Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("In evaluating claims of ineffective assistance during the guilt stage of the trial, the petitioner must show a 'reasonable probability' that the jury would have otherwise harbored a reasonable doubt concerning guilt."); *Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994) (The showing of prejudice must be "rather appreciable;" a mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland*). Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *Strickland*, 466 U.S. at 697; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

Further, a reviewing court is required to presume that counsel has rendered adequate assistance and made all significant decisions in the exercise

14

of reasonable professional judgment. *Strickland*, 466 U.S. at 690; *Amos v. Scott*, 61 F.3d 333, 347–48 (5th Cir. 1995). To make that determination, the Court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. *Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999).[7] Moreover, where, as here, the facts adduced at trial overwhelmingly point to the defendant's guilt, any ineffective-assistance-of-counsel claim must fail for lack of prejudice. *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *Williams v. Scott*, 35 F.3d 159, 164 (5th Cir. 1994); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

Finally, bald assertions without evidentiary support are insufficient to warrant a hearing. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) ("mere conclusory allegations on a critical issue are insufficient to raise a constitutional claim"); *Ross v. Estelle*, 694 F.2d 1008, 1013 (5th Cir. 1983) (conclusory allegations unsupported by any specific facts do not merit a federal court's attention); *In re Vey*, 520 U.S. 303 (1997) (denying petitioner *in forma pauperis* status because "[h]er various allegations are supported by nothing

---

[7]      "It bears repeating that the test for federal habeas purposes is *not* whether [an inmate] made that showing [required by *Strickland*]. Instead, the test is whether the state court's decision–that [the inmate] did *not* make the *Strickland*–showing–was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claims." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003); *see Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004).

other than her own conclusory statements that they are true"); *United States v. Flores*, 135 F.3d 1000, 1007 (5th Cir. 1998) (district court properly granted government's motion for summary judgment where petitioner's claims "are conclusory and wholly unsupported by any probative evidence or affidavits in the record"). Contrary to Panus's assertions, trial counsel's assistance, taken as a whole, was far from inadequate and unprofessional.

As a preliminary matter, all the state law issues underlying Panus's ineffective assistance claims were determined against him by the state habeas court when it denied his claims on the merits. *See* SHCR-01, at "Action Taken" Sheet. By reviewing Panus's application, the habeas record, and trial counsel's affidavits, the state habeas court necessarily found the state law issues underlying the ineffective assistance of counsel claims to be without merit. *Strickland*, 466 U.S. at 687. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Federal courts "may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221 (1982); *Fierro v. Lynaugh*, 879 F.2d 1276, 1278 (5th Cir. 1989). Federal courts "do not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64,

67 (5th Cir. 1994); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991); *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986). Applying *Strickland* here, Panus cannot meet his burden of proof and is unable to show either deficiency or prejudice.

## A.    Rejected Plea Deal

Panus first alleges that he rejected a plea offer based on erroneous advice from trial counsel. ECF No. 1, at 6–7; ECF No. 4, at 3–10. Specifically, he asserts that trial counsel told him that the first-degree felony aggravated kidnapping charge was improperly enhanced and he would have it reduced to a third-degree felony kidnapping charge. *Id.* Based on this, Panus claims he rejected a plea offer for an agreed sentence of forty years' imprisonment. *Id.* Trial counsel provided affidavits in response to Panus's claims On state habeas review. SHCR-01, at 86–102. Trial counsel's affidavit details at least three instances in which they discussed the plea offer with Panus leading up to trial. As explained by trial counsel:

> We reviewed the evidence in detail with Mr. Panus and went step-by-step through how we thought the trial would develop. We asked him to reconsider the decision to reject the plea offer, believing that Judge Kennon would sentence him to a higher amount. We reviewed the improper-enhancement defense, told him we could not promise its success, and that the strategy was risky. Mr. Panus was angry at us because of our attempts to redirect him to consider the plea deal, accused me of neglecting his case and working against him, and demanded that I ask for another lawyer to be appointed to his case. Despite our efforts to caution him about

17

> trial, Mr. Panus refused to reconsider the plea offer and directed
> us to prepare for trial.

*Id.* at 92. The state habeas court found trial counsel to be credible and that they did not misadvise Panus about the validity or likelihood of success of the improper enhancement argument. *Id.* at 109–10. The untested nature of the strategy was explained to Panus numerous times, and he was given a final opportunity to accept the plea offer even after he was found guilty and before the punishment phase of trial began but he still refused. *Id.* at 110. Panus's assertions thus fail to establish that the state court's denial of his first ineffective assistance claim was unreasonable.

## B.    Legal Theory at Trial

Panus next asserts that trial counsel was ineffective for arguing at trial that the aggravated kidnapping charge was improperly enhanced and failing to present mitigating evidence for a "mens rea" defense. ECF No. 1, at 6–8; ECF No. 4, at 11–14. The "improper enhancement" argument was rejected by the trial court and the appellate court. However, that a trial strategy was ultimately unsuccessful does not establish ineffective assistance of counsel. *Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004). Furthermore, claims of ineffective assistance premised on trial strategy are unlikely to state a claim for federal habeas relief. *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) ("[a] conscious and informed decision on trial tactics and strategy cannot be the

basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.") (citations omitted); *see also Yohey*, 985 F.2d at 228 ("[g]iven the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit [Fifth Circuit] will not second guess legitimate strategic choices."). As explained by trial counsel on state habeas review, trial counsel fully explored Panus's "mens rea" defense as a possible trial strategy. SHCR-01, at 86–90. However, as detailed below, Panus's actions and the weight of the evidence did not support his proposed defensive argument that he was rescuing the victim from her abusive ex-boyfriend. *Id.* at 87–89.

> I reviewed the evidence I received from the DA's office. As with any case, conflicting witness statements do not necessarily cause me concern when deciding what advice to give a client. But a few issues were particularly alarming to me in my evaluation of the case. First, [the victim] had called 911 from Mr. Panus's truck during the drive and dropped her phone. The recording of that call was going to be difficult to overcome.
> …
> [Panus's] behavior and his responses…gave me doubts as to his ability to tell a coherent or even basically credible story from the stand. My review of the evidence confirmed my initial thoughts. His evasiveness about the prior case in Wisconsin, his version of what happened, the fact that [the victim] ran from the vehicle barefoot and in her underwear and for a mile to the highway, the 911 call, all contributed to that conclusion.
> …
> Mr. Panus continually undercut my ability to raise this defense in preparation for trial. He wrote several long letters from the jail to [the victim], which seemed harassing and inappropriate. I asked him to stop, but he continued. These letters most certainly would

have been admitted had he testified about his mental state, and I
believed they were very damaging.

...

[The victim] did not request help or communicate to Mr. Panus, or
anyone else, that she was in distress from Gauthier before Mr.
Panus's actions in this case. She clearly knew how to use her cell
phone to call 911 undetected but she had not. She had not sent a
message or make a call requesting help. The evidence suggested
the opposite—that [the victim] did not want Mr. Panus involved
with her any more.

[The victim's] testimony included information about Mr. Panus
becoming increasingly possessive, jealous, and controlling in their
relationship as a reason she decided to end it. She also testified
about wanting to return to a relationship with [her ex-boyfriend].
Her testimony matched both the tone and content of her responses
to letters Mr. Panus was sending and to my own attempts to
contact her.

Her testimony combined with Mr. Panus's communications with
her pre-trial and his own behavior, confirmed my opinion that his
testimony would lead to disaster.

*Id.* After reviewing the record, Panus's habeas application, and trial counsel's

affidavits, the state habeas court concluded that "trial counsel's decision not to

present evidence in support of [Panus's] offered defense was a reasonable,

strategic decision that fell within the wide range of reasonable assistance and

such a decision was sound trial strategy." *Id.* At 114. Panus's assertions fail to

show that the state court's decision was unreasonable.

## C.    Conceding Guilt

Panus next claims that trial counsel was ineffective for conceding guilt

during the guilt/innocence phase of trial against his wishes. ECF No. 1, at 6–

8; ECF No. 4, at 11–14. Specifically, Panus argues that a concession of guilt was implied by the "improper enhancement" defense used by trial counsel. ECF No. 4, at 12–13. However, as noted by the state habeas court, an argument that denies the defendant's legal guilt does not implicitly concede to the defendant's factual guilt. SHCR-01, at 112. Trial counsel "through final argument contested the notion that [Panus] was guilty by arguing to the jury that the State had not met its burden of proof and that the jury should return a verdict of 'not guilty.' " SHCR-01, at 112; 12 RR 54–57. Panus's assertion that trial counsel conceded guilt against his wishes is therefore meritless.

### D.    Decision to Testify

Panus further claims that trial counsel was ineffective for advising Panus not to testify during the guilt/innocence phase of trial. ECF No. 1, at 6–8; ECF No. 4, at 11–14. A criminal defendant has a constitutional right to testify on their own behalf, which may be waived if done knowingly and voluntarily. *See Rock v. Arkansas*, 483 U.S. 44, 49–52 (1987); *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002). Additionally, defense counsel may properly advise a client not to testify. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). "[T]here is 'a strong presumption that counsel's decision not to place [a defendant] on the stand was sound trial strategy.' " *Bower v. Quarterman*,

497 F.3d 459, 473 (5th Cir. 2007) (quoting *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001)).

In the instant case, trial counsel explained on state habeas review that they discouraged Panus from testifying because of his demeanor, describing him as hostile and argumentative. SHCR-01, at 98. As explained on state habeas review, "[w]hen confronted with evidence that contradicted or undercut one detail or version, [Panus] would deny having said anything contrary and would change his story. A few minutes later he would change the story again, and mix the details from the versions together. He would become agitated and angry when challenged in anyway." SHCR-01, at 87. Trial counsel feared that Panus would not present well and would become hostile on the stand. *Id.* Additionally, trial counsel was concerned that if Panus chose to testify the "harassing and inappropriate" letters he wrote to the victim while in jail would be admitted, which they believed would be very damaging. *Id.* at 88. The record shows that trial counsel consulted with Panus about his choice to testify and he voluntarily waived the right. 12 RR 24–27.

### E.    Preserving for Appellate Review

Finally, Panus alleges that trial counsel was ineffective for failing to preserve his constitutional challenge to his sentence. ECF No. 1, at 9; ECF No. 4, at 16. However, as explained below, Panus's claim asserting sentencing error

does not implicate any constructional rights. *See* part III, *infra*. Rather, his challenge to the charge of aggravated kidnapping is a matter of Texas law, and trial counsel properly preserved this claim which was reviewed on the merits on direct appeal. *Panus*, 2018 WL 4140851, at \*5–\*6. Panus therefore fails to demonstrate that trial counsel was ineffective in preserving his claims for appellate review.

When a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state court, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Haynes v. Cain*, 298 F.3d 375, 379 (5th Cir. 2002); *Santellan v. Cockrell*, 271 F.3d 190, 198 (5th Cir. 2001). Panus failed to meet this burden, and for this reason his claims must be denied and dismissed with prejudice as he fails to show that his case was prejudiced by alleged trial-counsel deficiency, *see Strickland*, 466 U.S. at 687, and fails to show that the state court decision involved an unreasonable application of the *Strickland* standard. *See Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997).

## III.  Panus's Claim Asserting Sentencing Error Is Meritless and Not Cognizable on Federal Habeas Review. (Claim 3)

Panus asserts that the life sentence assessed for his conviction of the first-degree offense of aggravated kidnapping is invalid. ECF No. 1, at 9; ECF

No. 4, at 14–15. Specifically, he asserts that his use of a firearm was improperly used both to prove an essential element of the kidnapping charge and to enhance the same charge to aggravated kidnapping. *Id.* Panus's assertions, however, are meritless and fail to state a claim for which federal habeas relief can be granted.

Panus asserts that the sentence is in violation of the Fifth, Sixth, and Fourteenth Amendments but fails to explain how any of these amendments are implicated by his claims. *See* ECF No. 1, at 9; ECF No. 4, at 14–15. He cites only to Texas state court decisions and Texas statutes, without any reference to federal law to support his position. *Id.*

Furthermore, Panus raised this claim on direct appeal, where the state appellate court denied it based on Texas law. *Panus*, 2018 WL 4140851, at *5– *6. As explained by the court:

> Here, Panus was charged with aggravated kidnapping based on the allegation that he abducted Cooper with the intent to prevent her liberation by either using—or threatening to use—deadly force and Panus used a deadly weapon, namely a firearm. *See* Tex. Penal Code §§ 20.01(2)(B), 20.04(b). Based on the evidence at trial—including Cooper's testimony that Panus hit her in the face with his gun and threatened to kill her if she made a scene—the jury could have reasonably determined that Panus prevented Cooper's liberation by threatening to use deadly force. *See Ramirez v. State*, 692 S.W.2d 729, 731 (Tex. App.—Waco 1985, no pet.) (concluding that threat of deadly force "can be communicated by words alone, separate and apart from exhibiting a deadly weapon"); *see also Lawson v. State*, Nos. 02-13-00494-CR, 02-13-00495-CR, 2015 WL 392800, 2015 Tex. App. LEXIS 814 (Tex. App.—Fort Worth Jan. 29, 2015, no pet.) (mem. op., not designated

for publication) (concluding that abduction was committed by threat of deadly force where evidence showed that defendant told victim who did not want to go with him that he would kill her); *Geer v. State*, No. 03-09-00627-CR, 2010 WL 3370070, at *2, 2010 Tex. App. LEXIS 7058 at *5 (Tex. App.—Austin Aug. 26, 2010, no pet.) (mem. op., not designated for publication) (noting that threat of deadly force may involve threat to use force in future). Separate and apart from Panus's death threat to Cooper, the jury could have reasonably determined from the evidence at trial—including Cooper's testimony that Panus drove with the gun on his lap and visible to her—that Panus exhibited a deadly weapon during the commission of the kidnapping.

Under this theory, the element of "use of deadly force or a deadly weapon" would have been used only once—to elevate the offense of kidnapping to aggravated kidnapping. *See* Tex. Penal Code §§ 20.03–.04.

*Id.* It is not the function of a federal habeas court to review a state's interpretation of its own law. *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995); *Moreno v. Estelle*, 717 F.2d 171, 179 (5th Cir. 1983). Federal habeas courts "do not sit as a 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986)) (citations omitted); *see also Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) ("[f]ederal habeas courts are without authority to correct simple misapplications of state criminal law or procedure."). Rather, "[f]ederal habeas relief cannot be had 'absent the allegation by a petitioner that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)).

Panus was charged appropriately according to Texas statute, and he has failed to show that the state court's denial of his claim was a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States and this claim should therefore be denied. 28 U.S.C. § 2254(d).

## IV.    State Court Findings and Conclusions

Finally, this Court must defer to the state court determinations and deny habeas relief. The state habeas court determined that Panus's claims lacked merit. SHCR-01, at "Action Taken" Sheet. Here, the Honorable Rick J. Kennon presided over Panus's trial and state habeas proceedings. *See* SHCR-01, at 1 (Clerk's Summary Sheet), 103–18 (Findings and Conclusions); 162–69 (Judgments). For that reason, this Court *must* presume his findings to be correct. The trial court made credibility choices in favor of the State, and its express factual findings and credibility choices, as well as the implicit findings that flow from the trial court's credibility choices, are presumed correct in this forum.[5] The CCA adopted these determinations when it denied Panus's state

---

[5]    28 U.S.C. § 2254(e)(1); *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983) (applying presumption of correctness to implicit finding against the defendant's credibility, where that finding was necessarily part of the court's rejection of the defendant's claim); *Valdez*, 274 F.3d at 948 (presumption of correctness applies to both explicit and implicit findings necessary to support a state court's conclusions of mixed law and fact); *Self v. Collins*, 973 F.2d 1198, 1214 (5th Cir. 1992) (same).

writ application without written order on the findings of the trial court. SHCR-01, at "Action Taken" Sheet. The state courts' determinations did not result in a decision "that was contrary to, or [that] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). Therefore, this Court cannot grant habeas relief. *See id.*

## CONCLUSION

For the foregoing reasons, the Director respectfully requests that Panus's petition be denied and dismissed with prejudice, and the Court deny a certificate of appealability.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division


 /s/ Stephanie Wawrzynski
STEPHANIE WAWRZYNSKI*
\*Lead Counsel             Assistant Attorney General
State Bar No. 24101067

Criminal Appeals Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Stephanie.Wawrzynski@oag.texas.gov
(512) 936-1400
(512) 936-1280 (FAX)

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing

pleading has been served by placing same in the United States mail, postage

prepaid, on December 15, 2023, addressed to:

Justin Panus
TDCJ-CID #02167693
Robertson Unit
12071 F. M. 3522
Abilene, TX 79601

 /s/ Stephanie Wawrzynski
STEPHANIE WAWRZYNSKI
Assistant Attorney General